| | |
|---|---|
| In Re: CEI, LLC aka Communications Electrical Industries, LLC, Appellees _____ Brenda Livesay; and Ronald Livesay and Brenda Livesay Family Trust, Appellants, Vs. Langdon M. Cooper, Trustee in Bankruptcy for CEI, LLC aka Communications Electrical Industries, LLC; Kenneth W. Livesay; and Global Fiber, LLC, Appellees. _____ | ORDER DISMISSING APPEAL AND AFFIRMING ORDER APPEALED FROM |

**THIS MATTER** is before the Court on appellants' appeal from the September 26, 2018, Order (#1-1 here; #128 below) of the Honorable George R. Hodges, United States Bankruptcy Judge, entered in the Adversary Proceeding, Case No.: 13-01019. The Order appealed from granted the Trustee's (one of the appellee's herein) Motion for Approval of Compromise Settlement (#105 below). Appellants were not, however, parties to the Adversary Proceedings, but Claimants in the underlying bankruptcy proceeding.

-1-

Appellants objected to the proposed compromise settlement and were heard by Judge Hodges on those objections. Dissatisfied with the approval of the compromise settlement of the Adversary Proceeding, appellants filed this appeal.[1]

The Court has reviewed the appealed decision (#1-1 here; #128 below), the appellants' Opening Brief (#8), the plaintiff's Designations on Appeal (#2), appellees' Brief in Response (#9), and appellants' Reply Brief (#10). For the reasons that follow, the Court will affirm the Order and dismiss the appeal.

I.

As this is the third appeal from orders of the bankruptcy court, the following background is drawn largely from the Court's earlier Orders in Livesay I and Livesay II.

Appellant Brenda Livesay is both a beneficiary and a trustee of Ronald B. Livesay's (deceased) Revocable Trust. Additionally, Appellant Livesay is a creditor of Communications Electrical Industries ("CEI" or "Debtor"), a limited liability corporation that filed Chapter 7 bankruptcy. On June 4, 2013, Langdon M. Cooper, Trustee in Bankruptcy for CEI, ("Appellee" or "Trustee") filed the underlying adversary action against Global Fiber, LLC and Kenneth W. Livesay (collectively referenced herein as "Defendants" and at time "appellees") in the bankruptcy court.

Prior to filing the first appeal, Livesay I, appellant sought leave to intervene in the

---

1  The Court notes that this is appellants third appeal in the Adversary Proceeding.

underlying adversary proceeding as a party-plaintiff pursuant to Fed. R. Civ. P. 24. After all parties briefed the issue of intervention, the Judges Hodges held a hearing on appellant's Motion to Intervene and thereafter denied the motion by written Order (#30 below). Judge Hodges found that appellant had an interest in the proceedings but did not qualify as an intervenor. See #37 at 16 below. Judge Hodges' stated at the conclusion of the hearing:

> Well, I think I have to deny the motion to intervene for the reasons that Ms. Youngs [then counsel for Trustee] and Mr. Kight [counsel for Global Fiber] outlined and that are contained in the papers. I think the -- Ms. Livesay just does not qualify as somebody who's entitled to intervene. Although she has an interest, it is not one that qualifies her to intervene. So, Ms. Youngs, I'll ask you to draw the order on that if you would, please.

Id. The parties to the adversary proceeding pointed out that appellant failed to meet the requirements of an intervenor as a matter of right under Fed.R.Civ.P. 24(a)(2) because she did not make a timely motion or show that her interests would not be adequately represented by the parties. The written Order entered by the bankruptcy court stated, in its entirety:

> This matter came on to be heard on April 21, 2015 on the Motion to Intervene (docket no. 26) filed by Brenda Livesay and the subsequent responses filed by Defendant Global Fiber, LLC (docket no. 27) and the Plaintiff Trustee (docket no. 28). After review of the record and hearing argument, the Court concludes and it is, hereby ORDERED that the Motion to Intervene is denied.

See Order #30 below.

In considering her appeal from that Order in Livesay I, this Court affirmed the

bankruptcy court's Order denying the Motion to Intervene. Rather than appeal that decision to the Fourth Circuit, appellant elected to file a Motion to Reconsider this Court's Order of affirmance. See Motion for Reconsideration, Livesay I (#23 below). This Court denied that motion without prejudice as to appellant renewing before the bankruptcy court her allegation that appellee's statement that "almost three years['] worth of negotiations, litigation, and trial preparation" had occurred in this case was inaccurate. Id. at 4. On her return to bankruptcy court from the appeal in Livesay I, appellant filed with the bankruptcy court a Second Amended Renewed Motion to Intervene and a Motion for Discovery, which were both denied by the bankruptcy court. Order (#51 below). After the Motion for Discovery was denied, appellant issued subpoenas and attempted to serve those on counsel for the parties in the Adversary Proceeding. In essence, those subpoenas would have required counsel in the Adversary Proceeding to disclose and share with counsel for appellant the discovery they had completed in the bankruptcy proceeding. Those subpoenas were, however, quashed by the bankruptcy court, which found that appellant lacked authority under Rule 45, Fed.R.Civ.P., to issue those subpoenas.

In Livesay II, appellants appealed Judge Hodges second round of orders and other determinations of Judge Hodges. In disposing of Livesay II, this Court first determined that Judge Hodges properly denied the request for discovery because appellant was not a party to the litigation. Second, this Court determined that Judge Hodges' decision to quash appellant's subpoenas was appropriate under Rule 45, Federal Rules of Civil

Procedure, because appellant was not a party to the bankruptcy proceeding and therefore lacked authority to issue subpoenas in that proceeding. Third, the undersigned determined that the bankruptcy court was free to decide the issue presented by appellant's Motion to Reconsider and was correct in denying the relief sought in that motion. Fourth, this Court found no reason to revisit the undersigned earlier determination that Judge Hodges had properly denied appellant's request to intervene. <u>Livesay v. Cooper for CEI, LLC</u>, 2017 WL 7805746 (W.D.N.C. March 7, 2017). Those determinations were subsequently affirmed by the Court of Appeals for the Fourth Circuit. <u>In re CEI, LLC</u>, 706 Fed. Appx. 115 (4th Cir. Dec. 13, 2017).

II.

On appeal, appellants present the following issue: *Whether the Bankruptcy Court Erred in Granting the Trustee's Motion for Approval of Compromise Settlement of Controversy*. In pursuing that issue, appellants argue in their Opening Brief that they were improperly denied the right to conduct their own discovery, that the appellee-Trustee's presentation in support of the compromise settlement was inadequate, and that the bankruptcy court's Order based on that presentation was in error. Each argument will be addressed *seriatim*.

A.

Under 28 U.S.C. § 158(a) and 1334, district courts have jurisdiction to hear appeals of the decisions of bankruptcy courts. Generally, a district court reviews the bankruptcy

court's legal conclusions *de novo* and its factual findings for clear error. Jenkins v. Simpson, 784 F.3d 230, 234 (4th Cir. 2015). "Findings of fact are clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." In re Weiss, 111 F.3d 1159, 1166 (4th Cir. 1997) (internal quotation marks omitted). The abuse of discretion standard for review of an order approving a compromise settlement will be discussed below.

B.

First, the Court considers appellants' argument that the bankruptcy court improperly denied them an opportunity to engage in discovery. Whether to allow a party or non-party to engage in discovery in a bankruptcy proceeding is left to the sound discretion of the bankruptcy judge. In re ASI Reactivation, Inc., 934 F.2d 1315 (4th Cir. 1991). Inasmuch as this Court previously affirmed Judge Hodge's determination that appellants could not engage in discovery because they were not parties to the litigation and it appearing that such determination was affirmed by the Court of Appeals for the Fourth Circuit, the Court will not revisit that issue as the previous determination remains law of the case.

C.

Appellants next contend that the appellee-Trustee's presentation in support of the compromise settlement was inadequate. In earlier appeals, appellants argued that the Trustee had not conducted sufficient discovery to meaningfully engage in settlement

discussions. To support that contention, appellants attempted to subpoena from the Trustee the discovery he had received the underlying litigation. Those subpoenas were quashed by the bankruptcy court, this Court affirmed that determination, and that determination was n affirmed by the Court of Appeals for the Fourth Circuit as discussed above. Appellants now argue, as follows:

> the trustee's presentation was altogether inadequate and does not support the conclusion reached by the bankruptcy court approving the settlement which decision is now on appeal before this Court. (Doc. 129). No sworn testimony or affidavits were adduced at the hearing. No discovery was presented to the court for review, even in camera. The bankruptcy court simply approved the settlement without any meaningful review or findings supported by the record.

Appellants' Opening Brief at 4-5. While a review of what the bankruptcy judge had in front of him in reviewing the compromise settlement is certainly an appropriate issue on review, conducting that review from the perspective of the Trustee and what he or his counsel discovered does not appear to be the appropriate point of departure. Indeed, reviewing the Trustee's discovery files would be fraught with pitfalls, not the least of which would be attorney-client privilege. More importantly, such a review would overlook over important sources of information relevant to the bankruptcy court's determination, including the Complaint, the Answers, the Amended Answers, and even the Transcript of the 341 Meeting appellants filed in the Adversary Proceeding.

Inasmuch as the question is not whether the Trustee abused his discretion, the Court will consider all the evidence and materials found in the record in determining whether

Judge Hodges erred in approving the compromise settlement.

D.

Finally, appellants argue that the bankruptcy court's Order based on the Trustee's presentation was in error. While the proponent of the compromise settlement certainly has the burden of persuasion, the Court can find no case requiring a Trustee to present or for a bankruptcy judge to limit consideration to a settlement package prepared by the Trustee. Instead, it appears that a bankruptcy judge may consider whether a proposed compromise settlement is supported by evidence appearing anywhere in the record.

In conducting this review, the Court has reviewed each docket entry cited by appellants in their Designation of Record on appeal.[2] While not an exclusive list, the undersigned considered the Order appealed from (#1-1 herein and #128 below), the Motion to Approve Settlement (#105 below), the two Motions by Interested parties (#s 112 & 114 filed below), the Transcript of the hearing on the settlement approval hearing (#129 below), the Complaint (#1 below), the Answers (#s 8 & 9 below), and the Amended Answers (#s 15 & 20).

The Court's review begins with the Trustee's Motion for Approval of Compromise Settlement of Controversy (#105 below). In pertinent part, the motion described the

---

2  For the record on appeal, appellants designated the following entries from the Bankruptcy Court's docket of the adversary proceeding, No. 13-01019: 1, 8, 9, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21,22, 24, 25, 26, 28, 30, 31, 40, 42, 46, 47, 48, 49, 50, 51, 56, 57, 58, 60 , 65, 70, 72, 73, 74, 83, 87, 90, 97, 105, 107, 110, 112, 114, 116, 118, 121,128, 129, 130, 135, and 136.

settlement, as follows:

>   The Trustee and the Defendants have engaged in settlement negotiations. The Trustee has agreed to accept $75,000.00 in full and final settlement and release of all claims against the Defendants, including the Trustee's above-described claims. The total sum of $75,000.00 shall be paid over a ten (10) month payment plan ….

Motion (#105) at ¶ 3. In support of its argument that the settlement should be approved, the Trustee went on to argue, as follows:

>   The Trustee submits that the proposed Settlement with the Defendants is fair and reasonable and in the best interest of the estate of the Debtor inasmuch as the Settlement will effect [*sic*] a substantial savings of attorneys' fees and Court costs. The Trustee believes the Settlement should be approved by the Court as the Trustee believes the proposed Settlement will net more funds to the estate than would continued litigation.
>
>   ***
>   Here, while the Trustee believes his claims are wholly valid, the Trustee believes the possibility of collecting more than the Settlement to be slim. Any collection effort would be expensive in terms of attorney fees and court costs, time-consuming, and likely to net less to the estate than the proposed Settlement.

Id. at ¶¶ 4 & 8.

In light of those contentions, this Court now considers the Transcript of hearing on the Trustee's Motion to Approve Settlement. After counsel for the Trustee initially argued the motion, counsel for creditors Brenda Livesay and the Ronald Livesay and Brenda Livesay Family Trust (counsel for appellants herein) challenged the basis for approving the settlement. In response, counsel for defendants in the Adversary Proceeding (counsel for appellee Livesay herein), summed up the settlement efforts and the reasons that

supported approving the settlement, as follows:

> The settlement -- the matters that the Court needs to decide are developed and set forth in the motion itself very thoroughly, and we certainly, as the defendants, and have, you know, we worked long and hard of coming to a settlement over the course of about six months or so, I think. It involved sharing of documents, reviewing discovery documents, discussing the ability to pay, discussing the merits of the claims. Meeting -- I mean, it was an involved process. We certainly support it.
>
> Just a very brief as to the claims there, essentially fraudulent transfer-type claims and there is nothing that was actually transferred. And so I think a big piece of the trustee's decision-making process had to deal with the fact that there is a real good chance that the estate could come up here with just zero.
>
> On the ability to pay, we talked about that quite a bit and provided some documents. All of the things that I heard from Mr. Brewer talk about properties that were held as tenancy by the entireties between Mr. Livesay, the defendant, and his wife, who is not a defendant. None of that property would ever be able to be attached anyway. And that's -- I
> don't -- you know, we don't know how much is owed against them and whether it's still owed now. The property is going back to '95, you know, the trustee and I went through all of this together.
>
> My clients actually started making the payments themselves, you know, to a trust account, certainly pending your approval, but, you know, things are kind of resolved. This has been a really long case.
>
> With respect to the discovery, I would have two responses. One is that, you know, a big piece of my clients' reasoning for wanting to settle this was to kind of put it to bed and to take into consideration the costs of what it would take to bring this thing to a trial, which is, you know, any party should consider that. And, you know, if suddenly the whole thing opens up and we have discovery about this motion, well, that's going to throw all the cost analysis out the window. I mean, in and of itself, that's going to throw the settlement evaluation.

Transcript (#129 below at 15-17). After these arguments, Judge Hodges made the

following observations from the bench:

-10-

> Well, I believe that the motion sets out a sufficient basis for the settlement, and it appears that there is a significant chance the trustee would have ended up with nothing, especially in a fraudulent transfer case where there is no transfer and that and the motion and the record that I'm familiar with and the trustee's experience and judgement are worth something, and I think I should approve the settlement and will overrule the objection.

Id. at 18.

The Court next considers the Order (#1-1) appealed from. In that Order, Judge Hodges stated that he had considered the arguments of counsel, the proffer of evidence, and <u>the record before the Court</u>. Id. at 1. Judge Hodges then found in relevant part, as follows:

> The Trustee and the Defendants engaged in extensive settlement negotiations following the completion of lengthy informal and formal discovery. The Trustee agreed to accept $75,000.00 in full and final settlement and release of all claims against the Defendants, including the Trustee's above-described claims.
> ***
> the Court concludes that the Settlement is fair and reasonable and in the best interest of the estate of the Debtor inasmuch as the Settlement will effect [*sic*] a substantial savings of attorneys' fees and Court costs. The Trustee believes the Settlement should be approved by the Court based on a thorough examination of his claims following a lengthy informal and formal discovery process. The Trustee's claims were novel in that they were dependent on a showing that a transfer occurred in the form of a corporate opportunity lost by the Debtor, which corporate opportunity was provided to one or both Defendants. The costs of the litigation would have been large due to the complexity of the claims and the claims' fact-specific nature. Finally, the likelihood of collection on any judgment obtained by the Trustee was low, given that most of the individual Defendant's assets are in the form of real estate owned as tenants by the entireties with his nondefendant spouse and thus not subject to execution. Ultimately, the proposed Settlement will net more funds to the estate than would continued litigation.

Id. at ¶¶ 3 & 11. Judge Hodges then, after accurately reciting the law that controlled his determination, provided his reasoning for approving the settlement, as follows:

> The overriding concern of the court is to determine, giving proper deference to the judgment of the Trustee, whether the Settlement is proper under law and whether it is fair and equitable and in the best interest of all interested parties.
>     Perhaps the most important factor in determining the adequacy of a proposed settlement is the probability of success the estate would have if it pursued collection of its claim in an adversary proceeding against the likelihood that the estate would realize substantially less than the amount of a judgment for its claim, instead of settling the claim. The very purpose of a settlement is to avoid the risks of litigation, or collection of the judgment, in the face of "sharply contested and dubious issues," or the likelihood of little realization on collection. In the Matter of the New York, New Haven and Hartford Railroad Company, 632 F.2d 305, 307 (2d Cir. 1951). Thus, in evaluating the adequacy of settlement agreements, courts have acknowledged the wisdom of settling those claims for which proper resolution is disputed in the case law, or the diminished ability to collect. In the Matter of Carla Leather, Inc., 44 B.R. at 468. The wisdom of settling claims that assert novel legal principles must be even more assured. Here, the Trustee has conducted a thorough examination of his claims following a lengthy informal and formal discovery process. The Trustee's claims were novel in that they were dependent on a showing that a transfer occurred in the form of a corporate opportunity lost by the Debtor, which corporate opportunity was provided to one or both Defendants. The costs of the litigation would have been large due to the complexity of the claims and the claims' fact-specific nature. Finally, the likelihood of collection on any judgment obtained by the Trustee was low, given that most of the individual Defendant's assets are in the form of real estate owned as tenants by the entireties with his non-defendant spouse and thus not subject to execution. The proposed Settlement will net more funds to the estate than would continued litigation. While the Trustee believes his claims are wholly valid, he believes the possibility of collecting more than the Settlement to be slim. Any collection effort would be expensive in terms of attorney fees and court costs, time-consuming, and likely to net less to the estates than the proposed Settlement.
>     After a thorough review of the record, and based on the findings and

conclusions set forth above, the Court has determined that the Settlement is in the best interest of the Debtor's bankruptcy estate and should be approved….

Id. at ¶¶ 15, 16, & 17 (paragraph numbers removed).

Settlements reached in bankruptcy cases are different from the those in most non-bankruptcy cases, making them subject to bankruptcy court review and approval. Fed.R.Bankr.P. 9019. The role of the bankruptcy judge in this process finds its in Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968), wherein the Supreme Court held:

> Compromises are 'a normal part of the process of reorganization.' In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts. At the same time, however, it is essential that every important determination in reorganization proceedings receive the 'informed, independent judgment' of the bankruptcy court.... The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

Id. at 424–425 (citations omitted). Despite being decided under the *Bankruptcy Act of*

*1898*, TMT Trailer Ferry remains the touchstone for bankruptcy courts' consideration of compromise settlements under the *Bankruptcy Code of 1978*. In re Gordon Properties, LLC, 515 B.R. 454, 464 (Bankr. E.D. Va. 2013).

In determining whether a proposed settlement is appropriate, the bankruptcy judge must find that the settlement is (1) in the best interest of the estate and (2) fair and equitable. Id. at 465. Informing that decision, the bankruptcy court must consider the following four factors: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3rd Cir.1996), citing TMT Trailer Ferry, supra. Close review of the Order appealed from reveals that Judge Hodges made the required findings based on an appropriate evaluation of the TMT Trailer Ferry factors.

On appeal to this Court, review of a bankruptcy judge's resolution of a compromise settlement motion is limited to whether the Court below abused its discretion. Under the abuse of discretion standard, it is not for this Court to determine whether it would have approved the settlement had it been faced with the Trustee's motion in the first instance. Rather, the abuse of discretion standard requires affirmance of the bankruptcy court's determination unless this Court has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant TMT Trailer Ferry factors discussed above. Marx v. Loral Corp., 87 F.3d 1049,

1054 (9th Cir. 1996).

In order to appropriately exercise its discretion in making an independent evaluation, a bankruptcy court must have sufficient information about the settlement from which to make a knowledgeable decision. In re Panache Cuisine, LLC, 2013 WL 5350613, at *5 (Bankr. D. Md. Sept. 23, 2013). To limit that review to the evidence presented by the Trustee along with the motion would, unwittingly, restrain the bankruptcy court from conducting the independent review required. This Court is confident that an independent review was conducted in this case as Judge Hodges stated in the first page of the appealed-from-Order that he had considered the arguments of counsel, the proffer of evidence, and the record before the Court. Order (#1-1 here; #128 below, at 1). In turn, this Court has reviewed the determinations in the Order (discussed above) and finds that Judge Hodges findings, conclusions, and Order approving the settlement are fully supported by entirety of the record below.

This Court does note that missing from the Trustee's motion, the proffer made at the hearing, and from the Order appealed from, is the amount of the claim asserted in the Adversary Proceeding, which was ultimately compromised for $75,000. Review of the Complaint (#1 below) reveals that the amount of the alleged claim against both defendants was $5,146,123.86, Complaint (#1 below at 12), and that the Complaint annexed a chart detailing alleged avoidable transfers to appellee Livesay amounting to $143,743.08. Id. Ex. A. Judge Hodges, therefore, had before him the amount of the claim and allegations

concerning the conduct which informed the Trustee's pursuit of that claim in the Adversary Proceeding. Thus, the absence of the amount of the claim is harmless error as that amount is readily discernable from the pleadings that were before the bankruptcy court.

While the amount of the claim is substantially more than the compromise settlement, there is also evidence of record supporting the Trustee's arguments that a victory on the claim was anything but a certainty. The verified Answers and unverified Amended Answers of defendants clearly challenge the Trustee's assertion of the claim.[3] In addition, Judge Hodges had before him the Transcript of the 341 Meeting of Creditors, Transcript (#121-1 below), which appellants filed in the record. Clearly, appellant believes that the claim is stronger than the Trustee and the bankruptcy court determined and that appellee Livesay has assets to pay a higher settlement. Those arguments were squarely countered at the hearing as counsel for appellee Livesay made it clear in representations to Judge Hodges that the properties claimant referenced were held as joint tenancy properties beyond the reach of the court if a judgment was obtained.

In the end, this Court cannot find that the court below committed a clear error of judgment in the conclusions it reached upon a weighing of the relevant factors. Not only did the bankruptcy court determine that the proposed settlement was in the best interests of the estate and fair and equitable, Judge Hodges clearly considered the arguments of the

---

3   *See* Answers (#s 8 & 9 below) and Amended Answers (#s 15 & 20 below). The Amended Answers do not appear intended to supplant the Answers -- which is the usual result of filing an amended complaint or answer -- but instead appear to "supplement" the Answers by asserting jurisdictional defenses under *Stern*.

objecting creditors (appellants), applied current law, and apprised himself of all the facts necessary for forming an intelligent and objective opinion on the probabilities of ultimate success should the claim be litigated, the likely difficulties in collection as outlined by the Trustee, the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and the paramount interest of the creditors. TMT Trailer Ferry, supra.

The Order (#1-1 here; #128 below) of the bankruptcy court approving the compromise settlement is, therefore, affirmed, and the appeal is **DISMISSED.**

Signed: February 25, 2019

Max O. Cogburn Jr
United States District Judge